[Cite as *State v. Love* , 2011-Ohio-4147.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
GALLIA COUNTY

STATE OF OHIO,                          :
                                        :
      Plaintiff-Appellee,               :      Case No. 10CA7
                                        :
      vs.                               :      **Released: July 28, 2011**
                                        :
LARRY W. LOVE,                          :      DECISION AND JUDGMENT
                                        :      ENTRY
      Defendant-Appellant.              :

APPEARANCES:

Timothy Young, Ohio State Public Defender, and Craig M. Jaquith, Assistant State Public Defender, Columbus, Ohio, for Appellant.

C. Jeffrey Adkins, Gallia County Prosecutor, and Eric R. Mulford, Gallia County Assistant Prosecutor, Gallipolis, Ohio, for Appellee.

McFarland, J.:

{¶1} Appellant Larry W. Love appeals his conviction in the Gallia County Court of Common Pleas after a jury found him guilty of seven counts: two counts of trafficking in drugs, felonies of the fourth degree in violation of R.C. 2925.03(A)(2); three counts of possession of drugs, felonies of the fourth and fifth degree in violation of R.C. 2925.11(A); one count of trafficking in drugs, a felony of the fifth degree in violation of R.C. 2925.03(A)(1); and receiving stolen property, a felony of the fourth degree in violation of R.C. 2913.51(A).  On appeal, Appellant raises two assignments of error, arguing that 1) the trial court denied him

the right to confront witnesses against him when it admitted out-of-court statements made by a confidential informant; and 2) the trial court erred by not merging counts five and six of his conviction as allied offenses of similar import. Having reviewed the record, we find the trial court erred by admitting the confidential informant's out-of-court statements, but the error was harmless. We do find, however, the trial court failed to merge two allied offenses of similar import and sustain Appellant's second assignment of error. As such, we affirm in part the trial court's judgment, reverse in part, and remand the cause for further proceedings.

FACTS

{¶2} In February 2010, Gallia County Sheriff Deputies Nathan Harvey ("Dep. Harvey") and Fred Workman ("Dep. Workman") were in contact with a confidential informant ("CI"). The CI claimed to know Appellant and stated Appellant would soon be in Gallipolis, Ohio to sell drugs.

{¶3} Based upon this information, Dep. Harvey and Dep. Workman devised a plan to execute a controlled buy between the CI and Appellant. The CI would call Appellant and establish a time and place to buy drugs from Appellant. The CI would then wear an electronic audio recording device during the transaction, while the deputies monitored the audio recording and surveilled the area via video

camera. The deputies also enlisted the aid of Sergeant Robert Jacks ("Sgt. Jacks") of the Ohio State Highway Patrol.

{¶4} On February 9, 2010, the CI placed a recorded phone call to Appellant. The CI asked when Appellant would be arriving, and Appellant indicated it would be some time because he was driving from West Virginia and the roads were in poor condition. Appellant informed the CI he was out of the "hard" (crack cocaine), but he had the "boy" (heroin). Appellant also had "cane" (powder cocaine). Appellant told the CI he would contact her when he was closer to Gallipolis.

{¶5} Dep. Harvey then conducted a pre-buy interview with the CI, which he recorded. The CI confirmed what drugs she was going to purchase and the price. The CI then confirmed Dep. Harvey had searched her and given her $200 of marked money.

{¶6} Later that evening, Appellant met the CI at a Speedway gas station in Gallipolis. The CI entered the rear of Appellant's vehicle, which Appellant was driving, and which contained a passenger, Appellant's co-defendant Maryam Johnson ("Johnson"). From this point, Appellant's version of the events conflicts with Johnson's.

{¶7} According to Johnson, Appellant had both the heroin and powder cocaine, and he gave a portion of each to the CI in exchange for $200. After a

brief conversation, the CI exited the vehicle and Appellant began driving again. Shortly thereafter, a police cruiser appeared behind Appellant's vehicle. Johnson claimed Appellant threw the remaining cocaine into her lap. Johnson did not know what to do with the cocaine, so she placed it in her pant pocket.

{¶8} Appellant pulled into a nearby driveway and the cruiser pulled in behind him. Sgt. Jacks ordered Appellant out of the vehicle and handcuffed him. The remaining heroin was in a bag on Appellant's car seat and Johnson claims Appellant yelled at her to hide it. Johnson did not touch the heroin, but once she was handcuffed, she removed the cocaine from her pocket and placed it down the front of her pants.

{¶9} Appellant, conversely, contended the powder cocaine was Johnson's. When the CI entered Appellant's vehicle, Johnson put a small amount of powder cocaine into a plastic bag and placed it on the center console. Appellant handed the cocaine and the heroin to the CI and Johnson placed the remaining cocaine down the front of her pants. When Appellant exited the Speedway parking lot, he intended to place the remaining heroin into his pocket, but because he was high from smoking copious amounts of "cush" marijuana, he accidentally placed the heroin next to his thigh on the car seat. When Sgt. Jacks' cruiser was behind Appellant, he tried to find the heroin, but could not. As Sgt. Jacks was handcuffing

Appellant, Appellant saw the heroin on his car seat and shook his head, realizing his mistake.

{¶10} After the transaction, Dep. Harvey met with the CI and conducted a recorded post-buy interview, where the CI confirmed that Appellant had personally handed her the drugs. The CI identified the bagged substances as black tar heroin and cocaine and confirmed she had no additional narcotics on her person.

{¶11} Subsequently, the state indicted Appellant for multiples counts of trafficking in drugs and possession of drugs, regarding both the heroin and cocaine; tampering with evidence for allegedly asking Johnson to conceal the cocaine on her person; and receiving stolen property, because Appellant had taken the vehicle he was driving without the owner's permission.

{¶12} At the jury trial, the state sought to introduce the audio recording of the pre-buy interview containing the CI's statements. Appellant objected, claiming the CI was not subject to cross examination and claiming the state had yet to disclose the CI's identity. The trial court overruled Appellant's objection and permitted the jury to listen to the pre-buy interview. The state also introduced the recording of the post-buy interview, which contained additional out-of-court statements by the CI. The jury ultimately convicted Appellant of three counts of trafficking in drugs, three counts of possession of drugs, and one count of receiving stolen property.

**{¶13}** Appellant now appeals his conviction.

ASSIGNMENTS OF ERROR

I.      "THE TRIAL COURT ERRED WHEN IT ALLOWED THE STATE TO INTRODUCE TESTIMONIAL HEARSAY STATEMENTS OF A CONFIDENTIAL INFORMANT, WHOM MR. LOVE WAS NOT PERMITTED TO CROSS-EXAMINE, IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND SECTIONS 10 AND 16, ARTICLE I OF THE OHIO CONSTITUTION.

II.     "THE TRIAL COURT COMMITTED PLAIN ERROR WHEN IT FAILED TO MERGE THE OFFENSES OF TRAFFICKING IN HEROIN AND POSSESSION OF HEROIN, CONTRARY TO R.C. 2941.25."

FIRST ASSIGNMENT OF ERROR

*Pre-Buy Interview*

**{¶14}** In his first assignment of error, Appellant argues that the trial court erred when it permitted the state to introduce testimony and audio recordings containing the CI's out-of-court statements during the pre-buy and post-buy interviews.  Specifically, Appellant contends this violated his right to confront witnesses against him under the Sixth and Fourteenth Amendments of the United States Constitution and Sections 10 and 16, Article I of the Ohio Constitution.  We disagree.

**{¶15}** "[T]he admission or exclusion of evidence generally rests in the trial court's sound discretion." *State v. Jeffers*, 4th Dist. No. 08CA7, 2009-Ohio-1672, at ¶ 17, citing *State v. Sage* (1987), 31 Ohio St.3d 173, 51 N.E.2d 343.  "However,

questions concerning evidentiary issues that also involve constitutional protections, including confrontation clause issues, should be reviewed de novo." *Jeffers* at ¶ 17, citing *State v. Hardison*, 9th Dist. No. 23050, 2007-Ohio-366.

{¶16} The Sixth Amendment to the United States Constitution provides, "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him."  The Supreme Court of the United States has "held that this bedrock procedural guarantee applies to both federal and state prosecutions." *Crawford v. Washington* (2004), 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177, citing *Pointer v. Texas* (1965), 380 U.S. 400, 406, 85 S.Ct. 1065, 13 L.Ed.2d 923.  Likewise, Section 10, Article I of the Ohio Constitution provides, "[i]n any trial, in any court, the party accused shall be allowed * * * to meet the witnesses face to face."  Before its admission, "[w]here testimonial evidence is at issue * * * the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross examination." *Crawford*, 541 U.S. at 68.

{¶17} "The text of the Confrontation Clause * * * applies to 'witnesses' against the accused – in other words, those who 'bear testimony.'  2 N. Webster, An American Dictionary of the English Language (1828).  'Testimony,' in turn, is typically '[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact.' *Ibid.*  An accuser who makes a formal

statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not." *Crawford* at 51. Thus, the threshold question is whether the subject statements are testimonial.

{¶18} Ohio employs two tests to determine whether a statement is testimonial, dependent upon the status of the recipient. When statements are made to non-law enforcement, Ohio has adopted the "objective witness" test, whereby "a testimonial statement includes one made 'under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.'" *State v. Stahl*, 111 Ohio St.3d 186, 2006-Ohio-5482, 855 N.E.2d 834, at ¶ 36, quoting *Crawford* at 52.

{¶19} Conversely, when statements are made to law-enforcement officers or their agents, Ohio employs "the primary-purpose test": "'Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.'" *State v. Siler*, 116 Ohio St.3d 39, 2007-Ohio-5637, 876 N.E.2d 534, at ¶ 24, quoting *Davis v. Washington* (2006), 547 U.S. 813, 822, 126 S.Ct. 2266, 165 L.Ed.2d 224 (holding

a recorded phone call made to a 911 dispatcher was non-testimonial because the primary purpose was to resolve an ongoing emergency). As the CI made her statements during the pre-buy interview to Dep. Harvey, a law enforcement officer, we employ the primary-purpose test to determine whether the CI's statements are testimonial.

{¶20} Here, the CI's statements were testimonial. First, there was no objective ongoing emergency during the pre-buy interview. Second, the CI's statements were not regarding contemporaneous facts. Her statements pertained to what she and Appellant had discussed during a previous phone call and the impending controlled buy, none of which was contemporaneous. Third, the CI's statements were neither intended nor necessary to resolve an ongoing emergency, as none existed. Finally, there was a level of formality to the recorded pre-buy interview and the interview was prearranged, unlike the non-testimonial 911 call in *Davis* that was frantic and spontaneous. Overall, the primary purpose of the CI's statements was to establish or prove past events potentially relevant to later criminal prosecution, rendering her statements testimonial. See *State v. Arnold*, 126 Ohio St.3d 290, 2010-Ohio-2742, 933 N.E.2d 775, at ¶ 35.

{¶21} The state argues, however, the CI's statements are not hearsay, based upon our decision in *State v. Jones*, 4th Dist. No. 09CA1, 2010-Ohio-865, and thus there was no error. Yet our discussion of the Confrontation Clause in *Jones* was

dicta.  The appellant in *Jones* did not raise the confrontation issue with the trial court and waived the issue for our review upon appeal.  *Jones* at ¶ 20.

**{¶22}** Moreover, the state's alternative argument that the CI's statements qualify as present sense impressions under Evid.R. 803(1) is without merit. Whether statements would be admissible under a hearsay exception is immaterial to the threshold issue of whether they violate the Confrontation Clause.  *Crawford* was clear: whether out-of-court statements are admissible under the Sixth Amendment turns on whether they are testimonial, not whether they are hearsay. "[E]x parte communications might sometimes be admissible under modern hearsay rules, but the Framers certainly would not have condoned them."  *Crawford* at 51. "Where testimonial statements are involved, we do not think the Framers meant to leave the Sixth Amendment's protection to the vagaries of the rules of evidence. * * * *To be sure, the [Confrontation] Clause's ultimate goal is to ensure reliability of evidence, but it is a procedural rather than a substantive guarantee.*  It commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing it in the crucible of cross-examination."  (Emphasis added.)  *Crawford* at 61.  "Where testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation."  *Crawford* at 68-69. "Involvement of government officers in the production of testimony with an eye

toward trial presents unique potential for prosecutorial abuse – a fact borne out time and again throughout a history with which the Framers were keenly familiar. This consideration does not evaporate when testimony happens to fall within some broad, modern hearsay exception, even if that exception might be justifiable in other circumstances." *Crawford* at 56, fn. 7.

{¶23} Even before *Crawford*, it was clear the Confrontation Clause and the hearsay exceptions were separate and distinct considerations. "Although we have recognized that hearsay rules and the Confrontation Clause are generally designed to protect similar values, we have also been careful not to equate the Confrontation Clause's prohibitions with the general rule prohibiting the admission of hearsay statements. The Confrontation Clause, in other words, bars the admission of some evidence that would otherwise be admissible under an exception to the hearsay rule." (Internal citations omitted.) *Idaho v. Wright* (1990), 497 U.S. 805, 814, 110 S.Ct. 3139, 111 L.Ed.2d 638. To adopt the state's argument would ignore *Crawford*'s mandate and revert to the rule of *Ohio v. Roberts* (1980), 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (focusing on hearsay and permitting out-of-court statements that were admissible under a firmly rooted hearsay exception or a particularized guarantee of trustworthiness), which the U.S. Supreme Court explicitly overruled. We decline to adopt such a position.

{¶24} As we have determined, the CI's statements are testimonial. The state did not demonstrate the CI was unavailable to testify or that Appellant had a prior opportunity to cross-examine her. Without these showings, the trial court should have excluded the CI's testimony because Appellant was not afforded the right to confront and cross examine her. We hold the trial court erred in admitting the pre-buy interview into evidence. Thus, we turn to whether this error was harmless.

{¶25} "A constitutional error can be held harmless if we determine that it was harmless beyond a reasonable doubt." *State v. Conway*, 108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d 996, at ¶ 78, citing *Chapman v. California* (1967), 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705. "Whether a Sixth Amendment error was harmless beyond a reasonable doubt is not simply an inquiry into the sufficiency of the remaining evidence. Instead, the question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." Id., citing *Chapman* at 23 and *State v. Madrigal* (2000), 87 Ohio St.3d 378, 388, 721 N.E.2d 52. See, also, *Crawford* at 42, fn. 1.

{¶26} In *Chapman*, the improperly admitted evidence essentially covered the entire commission of the crime and was not harmless, warranting a reversal of the defendant's conviction and remand. In contrast, the Court in *Harrington v. California* (1969), 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284, found the improper admission of testimonial statements by co-defendants to be harmless.

The Supreme Court stated the standard announced in *Chapman* did not mean it had to reverse a conviction if it could "imagine a single juror" whose mind might have been made up or changed by the improper evidence. Rather, the Court's "judgment must be based on our own reading of the record and on what seems to us to have been the probable impact of the [improper evidence] on the minds of an average jury." *Harrington* at 254. Despite the Court's admonishment in *Chapman* not to place too much weight on the "overwhelming evidence" of guilt found in the remaining evidence, *Harrington* found the remaining evidence overwhelming and the error harmless. Id.

{¶27} Similarly, the Supreme Court of Ohio found the improperly admitted evidence in *Conway* had little impact on the jury because it was largely cumulative of the remaining evidence. *Conway* at ¶ 79. Additionally, the Court found the case in *Conway* was not close: there was significant evidence of the defendant's guilt, including his own testimony. *Conway* at ¶ 82. Thus, the improper admission of evidence in *Conway* was harmless beyond a reasonable doubt. *Conway* at ¶ 83. See, also, *United States v. Torres* (C.A.6, 1995), 63 F.3d 476 (holding improperly admitted hearsay testimony about whether defendant was known to carry a gun while performing drug transactions was harmless error; defendant made a written statement that he had a gun at the relevant time).

{¶28} Here, the trial court's error in admitting the pre-buy interview into evidence was harmless beyond a reasonable doubt.  The pre-buy interview was cumulative of the remaining evidence and its probable impact on the mind of an average jury was very little.  The only fact the pre-buy interview established that was not found in the remaining evidence was the breakdown of how the CI was going to spend the $200 in marked bills: $100 worth of heroin and $100 worth of cocaine.  (Pre-Buy Tr. at 7.)  We cannot say admission of this fact contributed to Appellant's conviction and warrants reversal.

{¶29} Accordingly, we find the trial court's improper admission of the pre-buy interview into evidence was harmless error.

*Post-Buy Interview*

{¶30} Appellant also contested the introduction of the post-buy interview, but he failed to object to its admission during the trial and waived all but plain error.  Under Crim.R. 52(B), "the *defendant* bears the burden of demonstrating that a plain error affected his substantial rights."  *State v. Perry*, 101 Ohio St.3d 118, 2004-Ohio-297, 802 N.E.2d 643, at ¶ 14, citing *United States v. Olano* (1993), 507 U.S. 725, 741, 113 S.Ct. 1770, 123 L.Ed.2d 508.  "Even if the defendant satisfies this burden, an appellate court has discretion to disregard the error and should correct it only to 'prevent a manifest miscarriage of justice.'"  (Internal quotation omitted.)  Id., quoting *State v. Barnes* (2002), 94 Ohio St.3d 21, 27, 759 N.E.2d

1240, quoting *State v. Long* (1978), 53 Ohio St.2d 91, 372 N.E.2d 804, at paragraph three of the syllabus. Further, to find plain error we must be able to say that, but for the error, the outcome of the trial clearly would have been otherwise. Id. at paragraph two of the syllabus; *State v. McCausland,* 124 Ohio St.3d 8, 2009-Ohio-5933, 918 N.E.2d 507, at ¶ 15; *State v. Braden,* 98 Ohio St.3d 354, 2003-Ohio-1325, 785 N.E.2d 439, at ¶ 50; *State v. Sanders* (2001), 92 Ohio St.3d 245, 263, 750 N.E.2d 90.

{¶31} Here, we find the introduction of the post-buy interview did not constitute plain error. While it may have been error for the trial court to admit the interview in contravention to Appellant's right to confrontation, as with the pre-buy interview, the facts elicited during the post-buy interview are cumulative of the properly admitted evidence. The post-buy interview established the following: the CI believed the substances she obtained to be black tar heroin and cocaine; she paid Appellant $200 for the substances, which was the same $200 Dep. Harvey had given her; the CI had no other contraband on her; and Appellant was the one who engaged in the hand-to-hand transaction with the CI. Yet all of this information was established through other, properly admitted, evidence. Given the cumulative nature of the post-buy interview, we cannot say the trial clearly would have been different, but for its erroneous introduction. Thus, Appellant suffered no prejudice and we find no plain error.

{¶32} Accordingly, we overrule Appellant's first assignment of error.

SECOND ASSIGNMENT OF ERROR

{¶33} In his second assignment of error, Appellant argues counts five and six of his indictment should have merged when the trial court sentenced him. Count five alleged Appellant trafficked 0.6 grams of heroin, while count six alleged he possessed the same 0.6 grams of heroin. The trial court held these counts did not merge and sentenced Appellant to 12 months for both counts, to be served consecutively. As we find these offenses should have merged as allied offenses, we sustain Appellant's second assignment of error.

{¶34} When determining whether multiple offenses should have merged under R.C. 2941.25, "[o]ur standard of review is *de novo.*" *State v. Buckta* (Nov. 12, 1996), 4th Dist. No. 96 CA 3. See, also, *Coleman v. Davis*, 4th Dist. No. 10CA5, 2011-Ohio-506, at ¶ 16 ("We review questions of law de novo."), quoting *State v. Elkins,* 4th Dist. No. 07CA1, 2008-Ohio-674, at ¶ 12, quoting *Cuyahoga Cty. Bd. of Commrs. v. State*, 112 Ohio St.3d 59, 2006-Ohio-6499, 858 N.E.2d 330, at ¶ 23.

{¶35} R.C. 2941.25 provides:

"(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may

contain counts for all such offenses, but the defendant may be convicted of only one.

"(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."

{¶36} As the Supreme Court explained in *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, under R.C. 2941.25, "the court must determine prior to sentencing whether the offenses were committed by the same conduct." *Johnson* at ¶ 47. The initial question is whether it is possible to commit the two offenses with the same conduct. *Johnson* at ¶ 48. If so, we must then look to the facts of the case and determine whether the two offenses actually were committed by the same conduct, "i.e., 'a single act, committed with a single state of mind.'" *Johnson* at ¶ 49, quoting *State v. Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, 895 N.E.2d 149, at ¶ 50. "If the answer to both questions is yes, then the offenses are allied offenses of similar import and will be merged." *Johnson* at ¶ 50.

{¶37} "Conversely, if the court determines that the commission of one offense will *never* result in the commission of the other, or if the offenses are

committed separately, or if the defendant has separate animus for each offense, then, according to R.C. 2941.25(B), the offenses will not merge." *Johnson* at ¶ 51.

{¶38} Here, the trial court stated in its judgment entry, "Counts Five & Six are not allied offenses of similar import under *Cabrales* because the trafficking charge was a sale or offer to sell as opposed to it being a mere transport or delivery of the drug."[1] The flaw with the trial court's analysis is *State v. Cabrales*, 118 Ohio St.3d 54, 2008-Ohio-1625, 886 N.E.2d 181, applied *State v. Rance* (1999), 85 Ohio St.3d 632, 710 N.E.2d 699; but the Supreme Court has since overruled *Rance*.[2] *Johnson* at syllabus.

{¶39} *Johnson* dictates a different conclusion. First, the subject 0.6 grams of heroin is the heroin Dep. Harvey recovered from the CI immediately after the controlled buy. Looking to the initial question in *Johnson*, it is possible to both sell and possess heroin with the same conduct. That is, when a person engages in an actual sale of heroin and physically gives the heroin to the purchaser, the seller necessarily possessed the heroin, too.

{¶40} We then look to whether the possession and trafficking were actually committed by the same conduct, "a single act, committed with a single state of mind" and in our view, they were. Appellant admitted to physically possessing a

---

[1] Contrary to the state's position, the trial court did not state the two crimes were committed with separate animi.

[2] We recognize that *Johnson* was not yet decided when the trial court performed its analysis and the court could not have foreseen the impending shift in the Supreme Court's jurisprudence.

larger quantity of heroin and selling 0.6 grams of it to the CI. As Appellant sold the heroin to the CI, Appellant also possessed the heroin. These were neither separate acts, nor did Appellant possess a separate animus for both crimes. The two crimes arise from the same conduct and under the facts of this case must merge as allied offenses of similar import.

{¶41} Accordingly, we sustain Appellant's second assignment of error and reverse the trial court's judgment of conviction and remand for sentencing. *State v. Whitfield,* 124 Ohio St.3d 319, 2010-Ohio-2, 922 N.E.2d 182, at ¶ 25. We note "[t]he state * * * retains the right to elect which allied offense to pursue on sentencing on a remand to the trial court after an appeal." *Whitfield* at ¶ 21. See, also, *State v. Murphy*, 4th Dist. No. 09CA3311, 2010-Ohio-5031, at ¶ 97.

**JUDGMENT AFFIRMED IN PART, REVERSED IN PART,**
**AND THE CAUSE REMANDED FOR PROCEEDINGS**
**CONSISTENT WITH THIS OPINION.**

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED IN PART, REVERSED IN PART AND THE CAUSE REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION and that the Appellee and the Appellant split the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Gallia County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.

Kline, J. and Abele, J.: Concur in Judgment and Opinion.

For the Court,

BY: _____

Matthew W. McFarland, Judge

**NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**