[Cite as *State v. Ellis*, 2012-Ohio-1022.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
WASHINGTON COUNTY

| | |
|---|---|
| STATE OF OHIO, | : |
| | : |
| Plaintiff-Appellee, | : Case No. 11CA3 |
| | : |
| vs. | : **Released: March 8, 2012** |
| | : |
| STEVEN B. ELLIS, | : <u>DECISION AND JUDGMENT</u> |
| | : <u>ENTRY</u> |
| Defendant-Appellant. | : |

_____
APPEARANCES:

Bradley P. Koffel, The Koffel Law Firm, Columbus, Ohio, for Appellant.

Roland W. Riggs, III, Marietta City Law Director, and Amy Brown Thompson, Assistant Marietta City Law Director, Marietta, Ohio, for Appellee.

_____

McFarland, J.:

**{¶1}** Appellant, Steven Ellis, appeals his conviction by the Marietta Municipal Court after a jury found him guilty of OVI, a first degree misdemeanor in violation of R.C. 4511.19(A)(1)(a). On appeal, Appellant contends that 1) the trial court erred by admitting the urine test result without requiring the State to establish a proper foundation; 2) trial counsel rendered ineffective assistance of counsel in violation of Appellant's rights under the Sixth, and Fourteenth Amendments to the Unites States Constitution, and Sections 10 and 16, Article I of the Ohio Constitution; 3) the trial court

violated Appellant's rights to due process and a fair trial when, in the absence of sufficient evidence, the trial court convicted Appellant of operating a vehicle while under the influence of alcohol; and 4) the trial court violated Appellant's rights to due process and a fair trial when it entered a judgment of conviction for operating a vehicle while under the influence of alcohol, when that judgment was against the manifest weight of the evidence.

{¶2} We find any error by the trial court in admitting testimony related to the urine test results without a proper foundation or expert testimony to be harmless error. As such, Appellant's first assignment of error is overruled. Accordingly, Appellant's argument that his trial counsel was ineffective for allegedly failing to object to such admission is without merit and his second assignment of error is overruled. Finally, in light of our findings under Appellant's first two assignments of error, we overrule Appellant's third and fourth assignments of error which challenge the sufficiency and weight of the evidence. Accordingly, the decision of the trial court is affirmed.

FACTS

{¶3} Appellant was cited for OVI, in violation of R.C. 4511.19(A)(1)(a), and failure to wear a safety belt, in violation of R.C.

4573.263(B)(1),[1] on May 19, 2010. At a subsequent hearing, Appellant pled not guilty to the charges and the matter was set for a jury trial. Prior to the jury trial, Appellant filed a motion in limine seeking an order restricting the State from introducing any testimony by the criminologist related to Appellant's urine test results. The trial court granted the motion, but specified that the State would be permitted to introduce the testimony of the criminalist if it also presented appropriate expert testimony to support the criminalist's testimony. Appellant's appeal involves the trial court's later allowance of testimony during trial by the state trooper related to Appellant's urine test results, without also introducing testimony by the criminalist, or lab technician, who tested the urine sample, to lay a foundation for the admissibility of the urine test results at trial.

{¶4} We initially must note that although the parties and the trial court agreed that the State would not be permitted to introduce evidence regarding Appellant's urine test results without also introducing the testimony of the criminalist and an expert, during opening statements, Appellant's trial counsel stated that Appellant submitted to a urine test and "he was under the legal limit." A bench conference was held as a result of the State's objection, in response to which the trial court determined, over Appellant's

---

[1] Based upon our review of the record it appears that this charge was disposed of separately from the jury trial and is not part of the current appeal.

objection, that the State would be able to introduce limited evidence regarding the urine test results, including that the urine test was performed within two hours of the stop and the results of test. In reaching this decision, the trial court determined that they could not "unring that bell" and that "the door has been opened" by Appellant's trial counsel.

{¶5} A review of the trial transcript reveals that Trooper Charles Robinson stopped Appellant at approximately 9:22 p.m. on May 19, 2010, just south of Marietta after observing Appellant driving with one headlight out and wearing no seatbelt. Trooper Robinson, who was the State's only witness, testified that upon making contact with Appellant, he observed Appellant's eyes to be glassy and bloodshot, and detected an odor of alcohol about Appellant's breath, which remained even after Appellant exited the vehicle. Trooper Robinson further testified that Appellant stated he had consumed a glass of wine with dinner prior to driving.

{¶6} Based upon this information, the trooper requested and Appellant agreed to perform field sobriety tests. According to the testimony of the trooper, Appellant exhibited six out of six clues on the Horizontal Gaze Nystagmus (HGN) test, scored three of out four clues for intoxication on the one leg stand test, and scored five out of eight clues for intoxication on the walk and turn test. The trooper further testified that based upon Appellant's

performance on the field sobriety tests, his eyes and his odor, he arrested Appellant. Further, in accordance with the trial court's order, the trooper was permitted to testify regarding the urine test performed on Appellant. Specifically, the trooper testified that Appellant submitted to a urine test within two hours of being stopped, the legal limit is .110, and Appellant's test results were .108.

{¶7} Appellant and his passenger on the night of his stop, Judith Piersall, also testified. Both Appellant and Ms. Piersall essentially testified that they had been playing in a competitive tennis match earlier in the day and then had eaten dinner at Ruby Tuesdays in Athens, Ohio, where they drank wine. Both Appellant and Ms. Piersall testified that Appellant had two glasses of wine with dinner, and then left the restaurant to return to Marietta. During trial, Appellant attributed his poor performance on the field sobriety tests to his foot and knee problems and to misunderstanding the instructions on the walk and turn test.

{¶8} After the evidence, the jury found Appellant guilty of OVI. The trial court's original judgment entry dated January 6, 2011, which was later determined to be deficient, was corrected via a nunc pro tunc entry dated May 25, 2011, and it is from this corrected judgment entry that Appellant now brings his timely appeal, assigning the following errors for our review.

ASSIGNMENTS OF ERROR

"I.     THE TRIAL COURT ERRED BY ADMITTING THE URINE TEST
        RESULT WITHOUT REQUIRING THE STATE TO ESTABLISH A
        PROPER FOUNDATION.

II.     TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF
        COUNSEL IN VIOLATION OF MR. ELLIS' RIGHTS UNDER
        THE SIXTH, AND FOURTEENTH AMENDMENTS TO THE
        UNITED STATES CONSTITUTION, AND SECTIONS 10 AND 16,
        ARTICLE I OF THE OHIO CONSTITUTION.

III.    THE TRIAL COURT VIOLATED STEVEN ELLIS' RIGHTS TO
        DUE PROCESS AND A FAIR TRIAL WHEN, IN THE ABSENCE
        OF SUFFICIENT EVIDENCE, THE TRIAL COURT CONVICTED
        MR. ELLIS OF OPERATING A VEHICLE WHILE UNDER THE
        INFLUENCE OF ALCOHOL.

IV.     THE TRIAL COURT VIOLATED STEVEN ELLIS' RIGHTS TO
        DUE PROCESS AND A FAIR TRIAL WHEN IT ENTERED A
        JUDGMENT OF CONVICTION FOR OPERATING A VEHICLE
        WHILE UNDER THE INFLUENCE OF ALCOHOL, WHEN THAT
        JUDGMENT WAS AGAINST THE MANIFEST WEIGHT OF THE
        EVIDENCE."

ASSIGNMENT OF ERROR I

{¶9} In his first assignment of error, Appellant contends that the trial

court erred by admitting the urine test results without requiring the State to

establish a proper foundation.  Specifically, Appellant argues that the trial

court violated his Sixth Amendment Confrontation Clause rights when it

permitted the State to introduce evidence of the urine test results without

calling the lab technician who tested the urine sample at trial to lay a

foundation.  Appellant claims that he had a right to cross-examine the lab

technician in order to challenge their credibility, the methodology employed,

and any other factors that might affect the weight to be given to the test

results, citing *State v. Syx*, 190 Ohio App.3d 845, 2010-Ohio-5880, 944

N.E.2d 722, and *Melendez-Diaz v. Massachusetts* (2009), _____ U.S.

_____, 129 S.Ct. 2527, in support.

{¶10} The State responds by pointing out that both parties had agreed

prior to trial, via a motion in limine, that the urine test results would not be

introduced absent testimony from the lab technician as well as an expert, and

it was Appellant who opened the door for the introduction of this evidence

by referencing it in opening argument.  Thus, the State argues that the

"curative admissibility doctrine" applies.  Alternatively, the State contends

that if the trial court did err in admitting the urine test results, such error was

harmless because of the "sheer amount of other evidence admitted" that

supports Appellant's conviction.

{¶11} In *State v. Syx*, as relied upon by Appellant, *Syx* argued that he

was denied his constitutional right to confront witnesses when the State

failed to call the phlebotomist who drew his blood sample and the

toxicologist who tested the sample to testify at trial in order to lay a

foundation for the admission of the blood-alcohol test results.[2] *Syx* at ¶ 22.

Based upon these facts, the *Syx* court held that "[w]ithout the testimony of

witnesses with first-hand knowledge, the test results should not have been

admitted into evidence."   Id. at ¶ 27.  In reaching this decision, the *Syx* court

reasoned as follows:

> "The Sixth Amendment's Confrontation Clause provides, 'In all
> criminal prosecutions, the accused shall enjoy the right * * * to be
> confronted with the witnesses against him.' The United States Supreme
> Court has held that the right to confrontation is violated when an out-of-
> court statement that is testimonial nature is admitted into evidence without
> the defendants having had the opportunity to cross-examine the declarant.
> *Crawford v. Washington* (2004), 541 U.S. 36, 68, 124 S.Ct. 1354, 158
> L.Ed.2d 177. Although the court explicitly left open a precise definition of
> what is 'testimonial,' it stated that the core class of testimonial statements
> includes statements 'that were made under circumstances which would lead
> an objective witness reasonably to believe that the statement would be
> available for use at a later trial.' Id. at 52, 124 S.Ct. 1354, 158 L.Ed.2d 177.
> Accord *State v. Stahl*, 111 Ohio St.3d 186, 2006-Ohio-5482, 855 N.E.2d
> 834, paragraph one of the syllabus. 'In determining whether a statement is
> testimonial for Confrontation Clause purposes, courts should focus on the
> expectation of the declarant at the time of making the statement.' Id. at
> paragraph two of the syllabus. Thus, the primary question we must consider
> is whether the results of a blood-alcohol test are testimonial in nature.
>    More than 30 years ago, the United States Supreme Court held that
> police do not violate the defendant's Fifth Amendment right against self-
> incrimination by requesting a blood test upon making an arrest for driving
> under the influence of alcohol, and therefore, there is no right to consult an
> attorney prior to deciding whether to submit to testing. *Schmerber v.
> California* (1966), 384 U.S. 757, 765, 86 S.Ct. 1826, 16 L.Ed.2d 908. One
> basis for that decision was the court's conclusion that the results of a test of a
> defendant's body fluids are nontestimonial in nature, in the sense that they
> do not constitute out-of-court 'testimony' by the defendant whose body

---

[2] In *Syx*, the blood test results were admitted into evidence via a chief forensic toxicologist that did not actually conduct the testing on Syx's blood sample, but rather was the direct supervisor of the toxicologist who did.  *Syx* at ¶ 27.

fluids have been tested. Id. While the holding of *Schmerber* remains intact, the court's more recent decision in *Melendez–Diaz v. Massachusetts* (2009), —— U.S. ——, 129 S.Ct. 2527, 174 L.Ed.2d 314, calls into doubt that the nontestimonial nature of a defendant's body fluids applies to a test result derived from those same body fluids. In other words, the body fluids themselves do not constitute compelled testimony for Fifth Amendment purposes, but the results of a test of those same body fluids, and statements by the persons conducting the testing, are testimonial in nature for purposes of the Sixth Amendment's confrontation clause.

In *Melendez–Diaz*, the court considered the admissibility of a lab analyst's affidavit regarding his testing of suspected narcotics, absent that analyst's testimony at trial, as provided for under Massachusetts law. The court explained that the lab analyst's affidavit is not a business record pursuant to Fed.R.Evid. 803(6), because the record is not kept in the regular course of business, but is created solely for the purpose of evidence at trial. Id. at ——, 129 S.Ct. at 2538, 174 L.Ed.2d 314. The court concluded that the affidavit is testimonial in nature, and the defendant, therefore, has a constitutional right to cross-examine the analyst who conducted the testing and compiled the report. Id." *State v. Syx* at ¶ 23-25.

{¶12} Here, the test results at issue are urine test results rather than blood test results and they were admitted into evidence by a state trooper rather than by a chief toxicologist; however, we find that despite these factual differences, the reasoning in *State v. Syx* is still applicable. Thus, we agree with Appellant's argument that he was denied his Sixth Amendment Confrontation Clause rights when the trial court permitted the State to introduce testimony related to the urine test results via the state trooper rather than a toxicologist, or lab technician, who performed the test.

{¶13} However, there are other factual differences between the case sub judice and *Syx* that we conclude ultimately leads us to a different result

than in *Syx*. First, we must be mindful that in *State v. Syx*, Syx filed a motion to suppress related to the admission of the both the field sobriety tests results, as well as the blood test results.  *Syx* at ¶ 13.  As noted in *Syx*, "[a]n assertion that test results are inadmissible in a criminal trial because the state failed to substantially comply with methods approved by the Director of Health for determining the concentration of alcohol in bodily fluids must be raised through a pretrial motion to suppress." *State v. Syx* at ¶ 29; citing *State v. Edwards,* 107 Ohio St.3d 169, 2005-Ohio-6180, 837 N.E.2d 752, paragraph one of the syllabus;  *State v. French* (1995), 72 Ohio St.3d 446, 1995-Ohio-32, 650 N.E.2d 887.  Here, Appellant failed to file a motion to suppress, but instead filed a motion in limine.  However, as the *Syx* court noted, relying on the Supreme Court of Ohio's reasoning in *French*, " '[t]his does not mean, however, that the defendant may not challenge the chemical test results at trial under the Rules of Evidence. Evidentiary objections challenging the competency, admissibility, relevancy, authenticity, and credibility of the chemical test results may still be raised.' " *State v. Syx* at ¶ 30; quoting, *French* at 452.

{¶14} Secondly, in *Syx*, the results of the field sobriety tests were ordered to be suppressed, unlike in the present case.  *Syx* at ¶ 8.  Here, not only did the trooper testify that upon being stopped Appellant had glassy,

bloodshot eyes, had an odor of alcohol, and admitted to having consumed alcohol prior to driving, the State further introduced evidence via testimony of the trooper that Appellant failed three field sobriety tests, including the HGN, one leg stand, and walk and turns tests. Thus, here there was other evidence in the record that demonstrated Appellant was driving his vehicle while under the influence. As such, and based upon the following, we conclude that any error by the trial court in admitting the urine test results constituted harmless error.

{¶15} "A constitutional error can be held harmless if we determine that it was harmless beyond a reasonable doubt." *State v. Conway*, 108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d 996, at ¶ 78, citing *Chapman v. California* (1967), 386 U.S. 18, 24, 87 S.Ct. 824; see also, *State v. Love*, Gallia App. No. 10CA7, 2011-Ohio-4147 at ¶ 25. "Whether a Sixth Amendment error was harmless beyond a reasonable doubt is not simply an inquiry into the sufficiency of the remaining evidence. Instead, the question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." Id., citing *Chapman* at 23 and *State v. Madrigal* (2000), 87 Ohio St.3d 378, 388, 2000-Ohio-448, 721 N.E.2d 52. See, also, *Crawford* at 42, fn. 1.

{¶16} In the case sub judice, if the urine test results are omitted, the remaining evidence related to Appellant's demeanor upon being stopped, his admission to consuming alcohol and his poor performance on the field sobriety tests is sufficient to support his conviction. Further, as to the question of whether there is a reasonable probability that the evidence complained of might have contributed to the conviction, we conclude that the answer is no. In reaching this decision, we must note that it was Appellant's trial counsel that initially "opened the door" to the issue of the test results, by informing the jury during opening arguments that Appellant "provided a urine sample" and that the "results" were "under the legal limit." Because of this statement made by counsel, the trial court authorized the State to introduce limited testimony via the trooper that Appellant submitted to a urine test within two hours of his stop, the per se or legal limit is .110, and Appellant's test results were .108.

{¶17} We cannot conclude that this evidence contributed to Appellant's conviction. First, the jury had already heard that Appellant's urine test result was under the legal limit. Secondly, the jury also heard from Appellant himself, that he had two glasses of wine, rather than one as originally reported. Under these circumstances, we do not believe that such testimony prejudiced Appellant. Further, we are persuaded by the State's

argument that "[a]rguably, if the evidence against the Appellant had been weaker, then the admission of the test results could have possibly exonerated him as the test was below the limit."  As such, despite the constitutional nature of this error, we nevertheless conclude that it was harmless beyond a reasonable doubt.  Thus, Appellant's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

{¶18} In his second assignment of error, Appellant contends that trial counsel rendered ineffective assistance of counsel by failing to object to the improper admission of the urine test results.  The State responds by arguing that contrary to Appellant's assertions, his trial counsel vigorously objected to the trial court's admission of the urine test results, but simply lost the objection and, as such, did not render ineffective assistance of counsel.

{¶19} In order to prevail on a claim of ineffective assistance of counsel, an appellant must show that (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced his defense so as to deprive him of a fair trial. *State v. Drummond*, 111 Ohio St.3d 14, 2006-Ohio-5084, 854 N.E.2d 1038, at ¶ 205, citing *Strickland v. Washington* (1984), 466 U.S. 668, 687, 104 S.Ct. 2052. To establish deficient performance, an appellant must show that trial counsel's performance fell below an objective level of reasonable representation. *State v. Conway*, 109

Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, at ¶ 95. To establish

prejudice, an appellant must show a reasonable probability exists that, but

for the alleged errors, the result of the proceeding would have been different.

Id. " 'In Ohio, a properly licensed attorney is presumed competent and the

appellant bears the burden to establish counsel's ineffectiveness.' " *State v.*

*Countryman*, Washington App. No. 08CA12, 2008-Ohio-6700, at ¶ 20,

quoting *State v. Wright*, Washington App. No. 00CA39, 2001-Ohio-2473;

*State v. Hamblin* (1988), 37 Ohio St.3d 153, 155-56, 524 N.E.2d 476, cert.

den. *Hamblin v. Ohio* (1988) 488 U .S. 975, 109 S.Ct. 515.

{¶20} Our review of the record reveals that although Appellant's

counsel did in fact mention that Appellant's urine test results were under the

legal limit during his opening argument, he objected to the State's request to

be able to introduce the actual urine test results.  Specifically, trial counsel

objected to the State's request to introduce this testimony without laying a

foundation via the lab technician who did the testing, and without expert

testimony to correlate the result, or explain its significance to the jury.  Thus,

we reject Appellant's argument that his counsel failed to object to the

admission of this testimony.

{¶21} Further, as discussed in our analysis of Appellant's first

assignment of error, we concluded that the trial court's admission of the

urine test result into evidence without foundation testimony by the State to be harmless error. Thus, even if Appellant's trial counsel had failed to object to the admission of this testimony, bearing in mind our determination that such admission constituted harmless error, we cannot conclude that the result of the proceeding would have been different but for the admission of this testimony. As such, Appellant has not demonstrated any prejudice as a result of this alleged error by trial counsel. Thus, we reject Appellant's contention that he received ineffective assistance of counsel at the trial court level and therefore overrule his second assignment of error.

## ASSIGNMENT OF ERROR III AND IV

{¶22} In his third and fourth assignments of error, Appellant contends that the trial court violated his rights to due process and a fair trial when it convicted him, the absence of sufficient evidence, of operating a vehicle while under the influence of alcohol, and further claims that his conviction was against the manifest weight of the evidence.

{¶23} "When an appellate court concludes that the weight of the evidence supports a defendant's conviction, this conclusion necessarily includes a finding that sufficient evidence supports the conviction." *State v. Puckett*, 191 Ohio App.3d 747, 2010-Ohio-6597, 947 N.E.2d 730, at ¶ 34. "Thus, a determination that [a] conviction is supported by the weight of the

evidence will also be dispositive of the issue of sufficiency." Id., quoting

*State v. Lombardi*, Summit App. No. 22435, 2005-Ohio-4942, at ¶ 9, in turn,

quoting *State v. Roberts* (Sept. 17, 1997), Lorain App. No. 96CA006462,

1997 WL 600669;  see also, *State v. Bostwick*, Scioto App. No. 10CA3382,

2011-Ohio-3671 at ¶ 10.  " 'Therefore, we first consider whether

[Appellant's] conviction [is] against the manifest weight of the evidence.' "

*Bostwick* at ¶ 10; quoting *State v. Leslie*, Hocking App. Nos. 10CA17 &

10CA18, 2011-Ohio-2727, at ¶ 15.

{¶24} When determining whether a criminal conviction is against the

manifest weight of the evidence, we "will not reverse a conviction where

there is substantial evidence upon which the [trier of fact] could reasonably

conclude that all the elements of an offense have been proven beyond a

reasonable doubt." *State v. Eskridge* (1988), 38 Ohio St.3d 56, 526 N.E.2d

304, at paragraph two of the syllabus. See, also, *State v. Smith*, Pickaway

App. No. 06CA7, 2007-Ohio-502, at ¶ 33. We "must review the entire

record, weigh the evidence and all reasonable inferences, consider the

credibility of the witnesses, and determine whether, in resolving conflicts in

the evidence, the trier of fact clearly lost its way and created such a manifest

miscarriage of justice that the conviction must be reversed and a new trial

granted." Id. at ¶ 41, citing *State v. Garrow* (1995), 103 Ohio App.3d 368,

370-371, 659 N.E.2d 814; *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. But "[o]n the trial of a case, * * * the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass* (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, at paragraph one of the syllabus.

{¶25} Under R.C. 4511.19(A)(1) "[n]o person shall operate any vehicle, streetcar, or trackless trolley within this state, if, at the time of the operation, any of the following apply: (a) [t]he person is under the influence of alcohol, a drug of abuse, or a combination of them both." In the case sub judice, Appellant does not challenge the validity of the traffic stop. Clearly, the trooper had probable cause to stop Appellant based on his uncontested driving with only one headlight. Nor does Appellant claim that the trooper did not have probable cause to arrest him for OVI. Instead, Appellant claims that the State failed to introduce evidence of impaired driving.

{¶26} "In order to find Appellant guilty of Driving Under the Influence as charged, the trial court would have to find Appellant operated any vehicle, streetcar, or trackless trolley within this state, and that at the time of the operation, Appellant was (a) under the influence of alcohol; (b) a drug of abuse; or (c) a combination of them. We have previously held that '[a] driver of a motor vehicle is considered "under the influence" of alcohol

when his "physical and mental ability to act and react are altered from the normal because of the consumption of alcohol.' " *State v. Stephenson*, Lawrence App. No. 05CA30, 2006-Ohio-2563 at ¶ 21; citing, *State v. Carter* (June 16, 1998), Washington App. No. 97CA13, 1998 WL 352588, citing *State v. Hardy* (1971), 28 Ohio St.2d 89, 91, 276 N.E.2d 247.

{¶27} The record reveals that Appellant was stopped for driving with only one headlight and failing to wear a seatbelt. As discussed above, the trial transcript reveals that upon approaching Appellant, the trooper observed glassy and bloodshot eyes, as well as the odor of an alcoholic beverage, which remained with Appellant even after exiting his vehicle. The record further reveals that while Appellant admitted to the trooper that he had consumed one glass of wine, Appellant testified at trial he had consumed two glasses of wine. Based upon these circumstances the trooper asked Appellant to submit to field sobriety testing, which he ultimately agreed to do. According to the testimony of the trooper, Appellant exhibited six out of six clues on the Horizontal Gaze Nystagmus (HGN) test, scored three of out four clues for intoxication on the one leg stand test, and scored five out of eight clues for intoxication on the walk and turn test. The trooper further testified that based upon Appellant's performance on the field sobriety tests, his eyes and his odor, he arrested Appellant.

{¶28} Despite Appellant's arguments, we find that substantial evidence supports his conviction. Specifically, such evidence revealed Appellant's ability to act and react were altered from normal because he was under the influence of alcohol, which he admitted to having consumed just previous to driving. As such, we cannot conclude that the jury clearly lost its way, thereby creating a manifest miscarriage of justice. Appellant's appearance and odor, coupled with his admission of consuming alcohol, as well as his poor performance on the field sobriety tests support his conviction for driving under the influence. Consequently, we find that Appellant's conviction is not against the manifest weight of the evidence.

{¶29} For the foregoing reasons, we find substantial evidence upon which the jury could have reasonably concluded that Appellant's guilt had been proven beyond a reasonable doubt. Furthermore, because Appellant's conviction is not against the manifest weight of the evidence, we find that sufficient evidence also supports his conviction. See *Leslie* at ¶¶ 15, 23.

{¶30} Accordingly, we overrule Appellant's third and fourth assignments of error.

**JUDGMENT AFFIRMED.**

# <u>JUDGMENT ENTRY</u>

It is ordered that the JUDGMENT BE AFFIRMED and that the Appellee recover of Appellant costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Marietta Municipal Court to carry this judgment into execution.

<u>IF</u> A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.

Kline, J.: Concurs in Judgment and Opinion.
Abele, P. J.: Concurs in Judgment only.

For the Court,

BY:  _____
Matthew W. McFarland, Judge

**NOTICE TO COUNSEL**
**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**