[Cite as *State v. Walton*, 2012-Ohio-2597.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


STATE OF OHIO

      Plaintiff-Appellee

-vs-

CORTNEY L. WALTON

      Defendant-Appellant

JUDGES:
Hon. Patricia A. Delaney, P. J.
Hon. John W. Wise, J.
Hon. Julie A. Edwards, J.

Case No. 2011 CA 00214

O P I N I O N


| | |
|---|---|
| CHARACTER OF PROCEEDING: | Criminal Appeal from the Court of Common Pleas, Case No.  2011 CR 00918 |
| JUDGMENT: | Affirmed in Part; Reversed in Part and Remanded |
| DATE OF JUDGMENT ENTRY: | June 11, 2012 |


APPEARANCES:

For Plaintiff-Appellee

JOHN D. FERRERO
PROSECUTING ATTORNEY
KATHLEEN O. TATARSKY
ASSISTANT PROSECUTOR
110 Central Plaza South, Suite 510
Canton, Ohio  44702-1413

For Defendant-Appellant

DEREK LOWRY
116 Cleveland Avenue NW
800 Courtyard Centre
Canton, Ohio  44702

*Wise, J.*

{¶1} Appellant Cortney L. Walton appeals his convictions, in the Court of Common Pleas, Stark County, for murder and improper discharge of a firearm into a habitation. Appellee is the State of Ohio. The relevant facts leading to this appeal are as follows.

{¶2} On the night of April 26, 2011, Diamond Singleton, age sixteen, was visiting the apartment of Brittany Nickol at 818 Shorb Avenue NW in Canton. Kasey Stone and her preschool-age son were also visiting. At the time, Nickol, the lessee of the apartment, was dating Appellant Walton. As Singleton sat in the apartment eating her dinner, several bullets flew through the living room. One of them struck Singleton in the chest.

{¶3} Canton Police Officer Gary Premier and his partner, Officer Rastetter, who were proceeding to another incident about five blocks north of 818 Shorb, immediately responded to a "shots fired" call. Sergeant Scott Prince also responded to the scene. The apparent shooter was gone. The officers tried to keep Singleton calm until paramedics arrived. Singleton was thereupon transported to Aultman Hospital, but she subsequently died as a result of her gunshot wound.

{¶4} Law enforcement investigators determined that at least five spent bullets had entered the Nickol apartment. The five that were analyzed were determined to have come from a 9 millimeter High Point pistol. Police were unable to find any shell casings near the house, and thus theorized that the incident had been a drive-by shooting. Investigators also found out that Nickol and appellant had argued earlier on the day of the shooting. Appellant had followed Nickol down the street, calling her names. Shortly

thereafter, some men sitting on a porch near Ninth and Shorb had intervened and "jumped" appellant. Appellant had subsequently gone to see his friend Carlos Jackson, at which time appellant threatened in Jackson's presence to "wet the block up." Later that day, shortly before dusk, appellant, in reference to Nickol, had also told a neighbor, Larry Blair: "I should shake this bitch up."

{¶5} Following further investigation, appellant was indicted on one count of murder, R.C. 2903.02(B) and one count of improperly discharging a weapon into a habitation R.C. 2923.161(A)(1). The matter proceeded to a three-day jury trial held on September 6, 7, and 8, 2011. Following the presentation of evidence, appellant was found guilty on both counts, as well as corresponding firearm specifications. Appellant was sentenced to fifteen years to life in prison on the count of murder, eight years on the count of discharging a firearm into a habitation,[1] and an additional three years on the firearm specifications, which were merged for sentencing. Appellant's total sentence was thus twenty-six years to life in prison.

{¶6} Appellant filed a notice of appeal on September 26, 2011. He herein raises the following four Assignments of Error:

{¶7} "I. THE TRIAL COURT ERRED BY ADMITTING HEARSAY STATEMENTS IN VIOLATION OF THE APPELLANT'S SIXTH AMENDMENT RIGHT TO CONFRONT WITNESSES.

{¶8} "II. THE TRIAL COURT ABUSED ITS DISCRETION BY GIVING AN INADEQUATE AND MISLEADING JURY INSTRUCTION.

---

[1] A nunc pro tunc entry was filed on October 11, 2011, to correct the sentence for the count of discharging a firearm into a habitation to eight years rather than "eight years to life" as originally written.

{¶9} "III. THE TRIAL COURT ERRED IN NOT FINDING THE CHARGES OF MURDER AND DISCHARGING A FIREARM INTO A HABITATION TO BE ALLIED OFFENSES AND MERGING THESE COUNTS FOR SENTENCING.

{¶10} "IV. THE TRIAL COURT'S FINDING OF GUILTY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE."

I.

{¶11} In his First Assignment of Error, appellant argues the trial court erred in admitting statements which were hearsay and/or in violation of his right to confront witnesses under the Sixth Amendment to the United States Constitution. We disagree.

{¶12} Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). The admission or exclusion of evidence rests in the sound discretion of the trial court. *State v. Sage* (1987), 31 Ohio St.3d 173, 180. As a general rule, all relevant evidence is admissible. Evid.R. 402; cf. Evid.R. 802. Our task is to look at the totality of the circumstances in the case sub judice, and determine whether the trial court acted unreasonably, arbitrarily or unconscionably. *State v. Oman* (Feb. 14, 2000), Stark App.No. 1999CA00027.

{¶13} In regard to appellant's claim of a confrontation violation, in *Crawford v. Washington* (2004), 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177, the United States Supreme Court held that under the Confrontation Clause, "testimonial" statements of a witness who does not appear at trial may not be admitted or used against a criminal

defendant unless the declarant is unavailable to testify and the defendant has had a prior opportunity for cross-examination.

{¶14} Issues concerning the Confrontation Clause and established hearsay exceptions are separate and distinct considerations. *State v. Love*, Gallia App.No. 10CA7, 2011-Ohio-4147, ¶23. "Although we have recognized that hearsay rules and the Confrontation Clause are generally designed to protect similar values, we have also been careful not to equate the Confrontation Clause's prohibitions with the general rule prohibiting the admission of hearsay statements. The Confrontation Clause, in other words, bars the admission of some evidence that would otherwise be admissible under an exception to the hearsay rule." (Internal citations omitted.) *Id.*, quoting *Idaho v. Wright* (1990), 497 U.S. 805, 814, 110 S.Ct. 3139, 111 L.Ed.2d 638.

{¶15} In the case sub judice, appellant challenges the introduction, over defense objection and motion in limine, of a hearsay statement made by the now-deceased victim, Diamond Singleton, which Brittany Nickol repeated in a taped telephone conversation between Nickol and appellant after the shooting, which was played for the jury. In the taped phone call, Nickol tells appellant that Singleton told her about appellant's threats made in another call earlier: "You got 10 minutes or I'm wettin' your house up. You told Diamond that. She told me."

{¶16} Diamond Singleton's repeated comment indeed appears to be hearsay, and even though she falls under the category of an unavailable declarant, we are unable to find that any of the hearsay exceptions under Evid.R. 803 or 804 would apply to her statement. However, even where we conclude the challenged comment was hearsay, the issue on appeal becomes whether appellant was prejudiced by the

testimony, as error in admitting hearsay does not justify reversal where it is harmless. *See, e.g.*, *State v. Loch*, Franklin App.No. 02-AP-1065, 2003-Ohio-4701, ¶ 13, citing *State v. Carter* (1995), 72 Ohio St.3d 545, 550, 651 N.E.2d 965. *See, also*, *Westinghouse Elect. Corp. v. Dolly Madison Leasing & Furniture Corp.* (1975), 42 Ohio St.2d 122, 326 N.E.2d 651. In the case sub judice, the trial court gave the jury a limiting instruction that the call could only be considered for purposes of showing how appellant reacted to Nickol's accusation (see our discussion as to appellant's second assigned error, infra.) Furthermore, the record reveals that Singleton's statement about appellant threatening to shoot the house was properly admitted later in the trial by the testimony of Carlos Jackson, who heard appellant say it over the phone in his presence. Tr. at 379.  As such, we find Singleton's hearsay statement to be cumulative evidence and therefore harmless under the facts and circumstances of this case.

**{¶17}** Finally, in regard to the issue of the Confrontation Clause, *Crawford* only applies if the out-of-court statements are "testimonial," which have been generally defined as "statements made during a police investigation or court proceedings" or statements that were "made under circumstances that would lead a reasonable person to conclude that such statements would later be available for use at trial ***." *State v. Douglas*, Marion App.No. 9-05-24, 2005-Ohio-6304, ¶44. The record does not support the conclusion that Singleton's statement to Nickol meet this definition. Accordingly, we find appellant's claim of a Confrontation Clause violation to be without merit.

**{¶18}** Accordingly, appellant's First Assignment of Error is overruled.

II.

{¶19} In his Second Assignment of Error, appellant contends the trial court committed reversible error in giving a jury instruction concerning the contents of a taped telephone call heard by the jury. We disagree.

{¶20} As noted previously, the State introduced a recorded telephone call, arranged with the assistance of a detective with the Canton Police Department, between appellant and Brittany Nickol. In the recorded call, Nickol repeated statements she said she had heard from the victim, Diamond Singleton, concerning threats made by appellant. Part of the conversation between appellant and Nickol was recorded as follows:

{¶21} "Nickol:      Bitch you called me talkin' crazy.  You called and talked to Diamond and told Diamond I had 10 minutes to be in the alley or you was wettin' my house up.  And then the next thing I know a couple hours later I'm across the street…

{¶22} "Walton:      It wasn't me.

{¶23} "'"***

{¶24} "Nickol:      It wasn't you but you called me. You called me and told me that.

{¶25} "Walton:      It wasn't me.

{¶26} "Nickol:      You got 10 minutes or I'm wettin' your house up.  You told Diamond that.  She told me.

{¶27} "***

{¶28} "Nickol:      So explain to me how somebody shoot up my house but coincidentally the same night, not even a few hours later, you tell me, right?  You tell my

sister, you ain't even tell me. You told Diamond like I, she got 10 minutes to be in the alley or I'm wetting' that bitch up.

{¶29} "Walton:      I don't know nothin' about that.

{¶30} "***".

{¶31} State's Exhibit 14.

{¶32} Appellant presently challenges the following instructions, which were given after the jury heard the recorded call:

{¶33} "As part of this phone call, the Court by way of the pretrial discovery where the parties exchanged the various pieces of evidence, I have had the opportunity to review the phone call that you're going to hear.

{¶34} "And on part of that conversation there are some statements made by the witness who's on the stand now, by Ms. Nickol, to an individual who she identifies as Mr. Walton about a previous phone call that had been made to Diamond Singleton on the evening in question.

{¶35} "And it's my finding that these are her allegations to him that you made this phone call and you said certain things, his response is back to that.

{¶36} "The fact as to whether a phone call was made or not is relevant to this case. That may be a relevant piece of evidence, and his responses back to that may be relevant to the facts of this case.

{¶37} "However, the fact that anyone claims that Diamond Singleton actually received the call and what was actually said on that call is not relevant because that's hearsay, and therefore, you cannot accept this for the fact or to prove that Diamond

Singleton actually received such a call or that Diamond Singleton may have stated to someone afterwards what was said on that call.  Those facts you may not accept.

**{¶38}** "So you're getting it for the limited purpose as to basically someone is saying to someone else you said this, you did this.  That is relevant.  Their response to that is relevant, but the fact is whether it actually occurred or not, that's not why this is being provided to you and you may not accept it for that purpose.

**{¶39}** "I know you need to think that through in your mind a little bit, but I think it will be apparent when you hear the call."

**{¶40}** Tr. at 292-293.

**{¶41}** We note defense counsel did not object to the pertinent jury instructions as required by Crim.R. 30(A). However, under Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." In *State v. Cooperrider* (1983), 4 Ohio St.3d 226, 448 N.E.2d 452, the Ohio Supreme Court discussed the application of the plain error doctrine in the context of an allegedly erroneous jury instruction. The Court stated: " * * * [A]n erroneous jury instruction 'does not constitute a plain error or defect under Crim.R. 52(B) unless, but for the error, the outcome of the trial clearly would have been otherwise.' *State v. Long* (1978), 53 Ohio St.2d 91, 97, 372 N.E.2d 804.  Additionally, the plain error rule is to be applied with utmost caution and invoked only under exceptional circumstances, in order to prevent a manifest miscarriage of justice." *Id.* at 227, 372 N.E.2d 804.

**{¶42}** In the telephone call at issue, it is noteworthy that the jurors were able to hear appellant repeatedly deny any participation in the shooting. Appellant nonetheless

maintains that the court's instruction was inconsistent with the details of the telephone call and actually misled the jury into thinking that appellant had admitted wrongdoing. See Appellant's Brief at 10. However, upon review, we find that appellant has failed to demonstrate that the outcome of the trial clearly would have been otherwise, but for the alleged jury instruction error. As such, we find no demonstration of plain error under the circumstances presented.

{¶43} Accordingly, appellant's Second Assignment of Error is overruled.

III.

{¶44} In his Third Assignment of Error, appellant argues the trial court erred in failing to find the charges of murder and improperly discharging a firearm at or into a habitation to be allied offenses of similar import. We agree.

{¶45} R.C. 2941.25 reads as follows:

{¶46} "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

{¶47} "(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."

{¶48} For the first decade of the millennium, law interpreting R.C. 2941.25 was based on *State v. Rance,* 85 Ohio St.3d 632, 636, 710 N.E.2d 699, 1999–Ohio–291, wherein the Ohio Supreme Court had held that offenses are of similar import if the

offenses "correspond to such a degree that the commission of one crime will result in the commission of the other." *Id.* The *Rance* court further held that courts should compare the statutory elements in the abstract. *Id.*

**{¶49}** However, the Ohio Supreme Court, in *State v. Johnson,* 128 Ohio St.3d 153, 942 N.E.2d 1061, 2010–Ohio–6314, specifically overruled the 1999 *Rance* decision. The Court held: "When determining whether two offenses are allied offenses of similar import subject to merger under R.C. 2941.25, the conduct of the accused must be considered." *Id.,* at the syllabus. As recited in *State v. Nickel,* Ottawa App.No. OT–10–004, 2011–Ohio–1550, ¶ 5, the new test in *Johnson* for determining whether offenses are subject to merger under R.C. 2921.25 is two-fold: "First, the court must determine whether the offenses are allied and of similar import. In so doing, the pertinent question is 'whether it is possible to commit one offense *and* commit the other offense with the same conduct, not whether it is possible to commit one *without* committing the other.' (Emphasis sic.) *Id.* at ¶ 48. Second, 'the court must determine whether the offenses were committed by the same conduct, i.e., "a single act, committed with a single state of mind." ' *Id.* at ¶ 49, quoting *State v. Brown,* 119 Ohio St.3d 447, 2008–Ohio–4569, ¶ 50 (Lanzinger, J., concurring in judgment). If both questions are answered in the affirmative, then the offenses are allied offenses of similar import and will be merged. *Johnson,* at ¶ 50."

**{¶50}** As an initial matter, we note the State herein maintains that appellant has waived any allied offense argument on appeal by failing to raise the issue when given opportunities to address the trial court both before and after the sentence was pronounced. However, it is generally recognized in Ohio that even where defense

counsel fails to challenge the trial court for its failure to merge, the imposition of multiple sentences for allied offenses of similar import constitutes plain error. *See, e.g, State v. May*, Lake App.No. 2010–L–131, 2011-Ohio-5233, ¶ 31, citing *State v. Underwood,* 124 Ohio St.3d 365, 922 N.E.2d 923, 2010–Ohio–1, ¶ 31.

**{¶51}** Appellant herein was convicted of murder under R.C. 2903.02(B), which reads as follows:

**{¶52}** "(B) No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of section 2903.03 or 2903.04 of the Revised Code."

**{¶53}** Appellant's murder charge was predicated on the underlying offense of improperly discharging a firearm at or into a habitation under R.C. 2923.161(A)(1), which charge was also the basis for Count II. Said statute states as follows:

**{¶54}** "No person, without privilege to do so, shall knowingly *** [d]ischarge a firearm at or into an occupied structure that is a permanent or temporary habitation of any individual."

**{¶55}** In the case sub judice, the State does not dispute that the first question under *Johnson*, i.e., whether it is possible to commit one offense and commit the other offense with the same conduct, would be answered in the affirmative under the circumstances. See Appellee's Brief at 21.

**{¶56}** We thus proceed to an examination of the second question under *Johnson*. The State responds that the firing of the five rounds into the front door area of Nickol's occupied apartment, and the resultant killing of Singleton by the impact of one

of those rounds, constituted two separate acts. However, we note that the State indicted appellant on a total of two counts in this instance, along with firearm specifications. The count of murder was expressly based on the theory that Singleton's death was the proximate result of appellant's underlying unlawful act of firing a gun into a habitation. While our conclusions would not necessarily apply to every conceivable scenario of a killing from a drive-by shooting into a house, under the circumstances of the case sub judice, we are persuaded that the act and animus of murder as charged herein under R.C. 2903.02(B) are inextricably part of the same conduct as the count of improper discharge of a weapon into a habitation under R.C. 2923.161(A)(1).

**{¶57}** We therefore find the trial court committed reversible error in convicting and sentencing appellant on both of the aforesaid counts.

**{¶58}** Accordingly, appellant's Third Assignment of Error is sustained.

IV.

**{¶59}** In his Fourth Assignment of Error, appellant contends his conviction for murder, based on the improper discharge of a firearm into a habitation, was not supported by sufficient evidence and was against the manifest weight of the evidence. We disagree.[2]

**{¶60}** In reviewing a claim of insufficient evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

---

[2] Based on our holding in regard to appellant's third assigned error, we will herein focus on the more serious charge of murder.

**{¶61}** In the case sub judice, appellant does not dispute that a fatal shooting took place at 818 Shorb Avenue. Appellant further does not dispute he had been outside Brittany Nickol's apartment earlier in the evening on the night of the shooting, and that the two of them frequently argued. He emphasizes, however, that no eyewitnesses as to the actual shooter or a getaway vehicle were presented at trial. He also points out that no search warrant was ever pursued as to appellant and his residence or belongings.

**{¶62}** However, it is well-established in Ohio that circumstantial evidence has the same probative value as direct evidence. *See, e.g.*, *State v. Pryor,* Stark App.No. 2007CA00166, 2008–Ohio–1249, ¶ 34, citing *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E .2d 492. The jury in this case was presented with evidence from three individuals, as further discussed infra, that appellant had either admitted to or threatened to shoot up Nickol's residence as a means of retaliation for an earlier altercation and for appellant being "jumped" by some men in the neighborhood. Appellant's friend Carlos Jackson saw appellant change into some darker clothing on the night of the shooting, and when Jackson later talked to him about the shooting, appellant said "it was an accident." Tr. at 386. When first interviewed by law enforcement, appellant denied even knowing the victim, Singleton. After the shooting, appellant fled to Alabama, later turning himself in after a traffic stop.

**{¶63}** Upon review of the aforesaid and the additional record before us, we find sufficient evidence, both circumstantial and in the form of appellant's own admissions, existed for reasonable fact finders to convict on the charge of murder under R.C. 2903.02(B). The conviction was thus supported by the sufficiency of the evidence.

**{¶64}** Our standard of review on a manifest weight challenge to a criminal conviction is stated as follows: "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered ." *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. See also, *State v. Thompkins* (1997), 78 Ohio St.3d 380, 678 N.E.2d 541. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175, 485 N.E.2d 717.

**{¶65}** Appellant commences his manifest weight argument by pointing out certain discrepancies in the various witnesses' testimony. He notes, for example, that Brittany Nickol and Kasey Stone portrayed different versions of the background of appellant's relationship with Nickol. Stone recalled that Nickol was trying to end the relationship; Nickol denied that this was the case. Additionally, Stone described appellant as Nickol's boyfriend; Nickol stated it was only a sexual relationship. Additional evidence was adduced that Nickol was actually seeing another man, Riccardo Hunt, who lived nearby. Stone also stated that appellant "smacked" Nickol during the argument that preceded the shooting; Nickol instead recalled that appellant pushed her face away. Appellant also notes that Officer Premier, who was nearby when he heard the dispatch for shots fired, recalled hearing just two bursts of gunfire. See Tr. at 197.

**{¶66}** Appellant also maintains that the State, in order to establish appellant as the shooter, relied upon the testimony of three witnesses with felony records – Larry

Blair, Carlos Jackson, and Eric Edwards - two of whom were expecting some benefit in their own criminal cases by testifying in the case sub judice.

**{¶67}** Blair, who lived at 808 Shorb Avenue, told the jury he had seen appellant on Shorb earlier on the day of the shooting, observing that appellant was upset about being jumped earlier. Blair recalled hearing appellant state "I should shake this bitch up." Tr. at 355. Blair, however, did not know to whom appellant was referring, until after the shooting. See Tr. at 356.

**{¶68}** Appellant also points out that Carlos Jackson, appellant's friend who lived at 1105 Shorb, was awaiting sentencing on a felony case, with sex offender classification potential, at the time of trial. Appellant maintains that the first time Jackson spoke to detectives, he stated that he had seen appellant shoot at four males, a few blocks from Nickol's address, and that in a conversation with him appellant had denied shooting at Nickol's apartment. Tr. at 391-393. During his second interview with detectives and at trial, Jackson stated that he did not see the shooting, but that he had seen appellant with a gun and had heard appellant threaten to shoot up the block shortly before the shooting. Jackson also claimed appellant had confessed to him that he shot at Nickol's apartment but that it was an accident. Tr. at 386.

**{¶69}** Finally, the State presented Eric Edwards, who testified that appellant admitted to him to shooting up the apartment, but claimed "the State didn't have shit on him." Tr. at 408. Appellant notes that Edwards disclosed this information after major facts of the case were in the newspaper. He also notes Edwards has previous convictions for robbery, domestic violence, theft and escape, and that he once pled not guilty by reason of insanity to a criminal charge.

**{¶70}** In sum, appellant proposes the possibility that he was falsely accused of being the shooter, rather than one of those appellant had fought with in the street earlier that night or the drug dealers in the area from whom Nickol had allegedly purchased marijuana.

**{¶71}** Nonetheless, upon review, we hold the jury did not clearly lose its way and create a manifest miscarriage of justice requiring that appellant's murder conviction be reversed and a new trial ordered. The conviction was not against the manifest weight of the evidence.

**{¶72}** Appellant's Fourth Assignment of Error is overruled.

**{¶73}** For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas, Stark County, Ohio, is hereby affirmed in part, reversed in part, and remanded for the trial court to review the issue of merger.

By: Wise, J.

Delaney, P. J., concurs.

Edwards, J., dissents.

_____

_____

_____

JUDGES

JWW/d 0423

EDWARDS, J., DISSENTING OPINION

{¶74} I respectfully dissent from the majority's disposition of the third assignment of error.

{¶75} R.C. 2941.25(B) states that where the defendant's conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, he may be convicted of all of them. In the instant case, appellant fired five rounds into the front door of the apartment, killing one person by the impact of one of those rounds. While the predicate offense for the felony murder charge was improperly discharging a firearm at or into a habitation in violation of R.C. 2923.161(A)(1), appellant fired four additional rounds at the occupied apartment, any one of which would support a conviction of R.C. 2923.161(A)(1). While the State chose not to charge appellant with five separate counts of improperly discharging a firearm at or into a habitation, I would find that firing four rounds which did not result in the death of Singleton constituted a separate act from the felony murder of Singleton.

{¶76} Accordingly, I would find the offenses are not allied offenses of similar import and should not merge for sentencing. I would overruled the third assignment of error and affirm the judgment of the trial court.

_____

Judge Julie A. Edwards

JAE/rad/rmn

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


STATE OF OHIO                          :
                                       :
      Plaintiff-Appellee               :
                                       :
-vs-                                   :        JUDGMENT ENTRY
                                       :
CORTNEY L. WALTON                      :
                                       :
      Defendant-Appellant              :        Case No. 2011 CA 00214


For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

Costs to be split equally between the parties.


_____


_____


_____

                          JUDGES