[Cite as *State v. Kelly*, 2012-Ohio-5875.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES: |
| | Hon. Sheila G. Farmer, P.J. |
| Plaintiff-Appellee | Hon. John W. Wise, J. |
| | Hon. Julie A. Edwards, J. |
| -vs- | |
| STEPHEN F. KELLY | Case No. 2012CA00067 |
| Defendant-Appellant | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Court of Common
                              Pleas, Case No. 2011CR1546

JUDGMENT:                     Affirmed

DATE OF JUDGMENT ENTRY:       December 10, 2012

APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

JOHN D. FERRERO                           GEORGE URBAN
PROSECUTING ATTORNEY                      116 Cleveland Avenue, NW
                                          Suite 808
BY: RENEE M. WATSON                       Canton, OH  44702
110 Central Plaza South
Suite 510
Canton, OH  44702-1413

*Farmer, P.J.*

{¶1}   On December 13, 2011, the Stark County Grand Jury indicted appellant, Stephen Kelly, on two counts of felonious assault with firearm specifications in violation of R.C. 2903.11 and 2941.145 and one count of improperly discharging a firearm into a habitation in violation of R.C. 2921.161.  Said charges arose from an incident wherein appellant fired shots into a home and injured two people.  One of the felonious assault counts was later dismissed due to an uncooperative victim.  The remaining felonious assault count involved the shooting of an eight year old boy.

{¶2}   A jury trial commenced on February 21, 2012.  The jury found appellant guilty as charged.  By judgment entry filed March 5, 2012, the trial court sentenced appellant to eight years on the felonious assault count, three years on the firearm specification, and four years on the improperly discharging a firearm into a habitation count, all to be served consecutively for a total aggregate term of fifteen years in prison.

{¶3}   Appellant filed an appeal and this matter is now before this court for consideration.  Assignments of error are as follows:

I

{¶4}   "THE DEFENDANT'S CONVICTIONS FOR ONE COUNT OF FELONIOUS ASSAULT IN VIOLATION OF R.C. 2903.11 AND ONE COUNT OF IMPROPERLY DISCHARGING A FIREARM INTO A HABITATION IN VIOLATION OF 2923.161 WERE AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."

II

{¶5} "THE TRIAL COURT ERRED IN FAILING TO MERGE THE TWO CONVICTIONS FOR SENTENCING PURPOSES."

I

{¶6} Appellant claims his convictions were against the sufficiency and manifest weight of the evidence. We disagree.

{¶7} On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. *State v. Jenks,* 61 Ohio St.3d 259 (1991). "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks,* at paragraph two of the syllabus, following *Jackson v. Virginia,* 443 U.S. 307 (1979). On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin,* 20 Ohio App.3d 172, 175 (1st Dist. 1983). See also, *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin,* at 175.

{¶8} We note circumstantial evidence is that which can be "inferred from reasonably and justifiably connected facts." *State v. Fairbanks,* 32 Ohio St.2d 34 (1972), paragraph five of the syllabus. "[C]ircumstantial evidence may be more certain,

satisfying and persuasive than direct evidence." *State v. Richey,* 64 Ohio St.3d 353, 1992-Ohio-44.  It is to be given the same weight and deference as direct evidence. *Jenks*, supra.

{¶9}  Appellant was convicted of felonious assault in violation of R.C. 2903.11(A)(2) which states "[n]o person shall knowingly***[c]ause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance."  He was also convicted of improperly discharging a firearm into a habitation in violation of R.C. 2923.161(A)(1) which states "[n]o person, without privilege to do so, shall knowingly***[d]ischarge a firearm at or into an occupied structure that is a permanent or temporary habitation of any individual."

{¶10}  Appellant argues the state failed to establish beyond a reasonable doubt that he was the shooter as there was no eyewitness testimony identifying the shooter and no firearm or shell casings were found.

{¶11}  On the day and evening of the incident, appellant spent his time with several friends, Rapheem Gordon, Ian Robinson, and Chad McLeod.  During the day, appellant, Mr. Gordon, and Mr. Robinson got into a verbal altercation with some neighbors.  Vol. 2-B T. at 20.  Mr. Gordon testified to hearing two gunshots from behind him.  Vol. 2-B T. at 23.  When he turned around, he observed appellant behind him putting a gun into his waistband.  Vol. 2-B T. at 26.  Mr. Robinson testified to seeing appellant with a gun.  Vol. 2-B T. at 77.  Later in the evening, appellant was driving the group around and ended up near the Wallace residence where the incident sub judice occurred.  Vol. 2-B T. at 30.  Mr. Gordon testified to appellant and Antonio Wallace disliking each other.  Vol. 2-B T. at 29.  Several people were gathered on the Wallace

porch.  Vol. 2-B T. at 31-32.  Appellant stopped the vehicle and said something about shooting "that bitch up," (Antonio Wallace's residence).  Vol. 2-B T. at 33, 83. Appellant's friends told him not to do it.  Vol. 2-B T. at 33, 78.  Appellant exited the vehicle and Mr. Gordon observed the handle of a gun in appellant's waistband.  Vol. 2-B T. at 36.  Mr. Gordon got behind the wheel and drove away.  Vol. 2-B T. at 35, 81. Thereafter, the group in the vehicle heard from four to eight gunshots.  Vol. 2-B T. at 37, 80.  Mr. Gordon admitted to just shaking his head and thinking that appellant was stupid.  Vol. 2-B T. at 37.  None of appellant's friends in the vehicle had a gun.  Vol. 2-B T. at 41-42, 76-77.  When Mr. McLeod took the stand, he claimed to not remember anything that was in his transcribed statement to police or his grand jury testimony.  Vol. 2-B T. at 98-113.  Both his statements to police and his grand jury testimony corroborated the testimony of Mr. Gordon and Mr. Robinson.  *Id.*

{¶12}  When police officers arrived at the Wallace residence, they found a chaotic scene with approximately twenty people outside screaming and yelling. T. at 150.  An eight year old child, Shaun Wallace, had been shot.  *Id.*

{¶13}  Ronada Wallace, Shaun's mother, testified to living in the residence in question with her ten children.  T. at 163.  Some ten people were outside on her porch when she heard approximately twelve gunshots.  T. at 167, 170.  Thereafter, she discovered her son, who was inside the house, had been shot.  T. at 166, 168-169.

{¶14}  Isaiah Bush testified when he was in the attention center, he spoke with appellant and appellant told him about the incident and admitted to rolling by the house and "busting," which means "shooting more than once like."  T. at 256-257, 259, 261. Mr. Bush testified that appellant told him his buddies would not be going to court to

testify against him because they were "his boys." T. at 263. Mr. Bush admitted to receiving a deal from the state in exchange for his testimony. T. at 266.

{¶15} Canton Police Sergeant Victor George testified about his interview with appellant following his arrest. Appellant described his three friends as "associates," and denied being in the vehicle. T. at 288-289. He then admitted to being in the vehicle earlier in the day, but was not in the vehicle when it was at the Wallace residence. T. at 289. Appellant also denied having a gun. T. at 292.

{¶16} The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. Jamison,* 49 Ohio St.3d 182 (1990). The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger,* 77 Ohio St.3d 415, 418, 1997-Ohio-260.

{¶17} Upon review, we find sufficient evidence, if believed, to support the convictions, and no manifest miscarriage of justice.

{¶18} Assignment of Error I is denied.

II

{¶19} Appellant claims the trial court erred in failing to merge the two convictions for sentencing purposes as they were allied offenses of similar import. We disagree.

{¶20} R.C. 2941.25 governs multiple counts and states the following:

(A) Where the same conduct by defendant can be construed to constitute

two or more allied offenses of similar import, the indictment or information

may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶21} In *State v. Johnson,* 128 Ohio St.3d 153, 2010-Ohio-6314, syllabus, the Supreme Court of Ohio held "[w]hen determining whether two offenses are allied offenses of similar import subject to merger under R.C. 2941.25, the conduct of the accused must be considered. *(State v. Rance* (1999), 85 Ohio St.3d 632, 710 N.E.2d 699, overruled.)"

{¶22} The *Johnson* court explained the following at ¶ 48–51:

In determining whether offenses are allied offenses of similar import under R.C. 2941.25(A), the question is whether it is possible to commit one offense *and* commit the other with the same conduct, not whether it is possible to commit one *without* committing the other. *Blankenship,* 38 Ohio St.3d at 119, 526 N.E.2d 816 (Whiteside, J., concurring) ("It is not necessary that both crimes are always committed by the same conduct but, rather, it is sufficient if both offenses *can be* committed by the same conduct. It is a matter of possibility, rather than certainty, that the same

conduct will constitute commission of both offenses." [Emphasis sic]). If the offenses correspond to such a degree that the conduct of the defendant constituting commission of one offense constitutes commission of the other, then the offenses are of similar import.

If the multiple offenses can be committed by the same conduct, then the court must determine whether the offenses were committed by the same conduct, i.e., "a single act, committed with a single state of mind." *Brown,* 119 Ohio St.3d 447, 2008-Ohio-4569, 895 N.E.2d 149, at ¶ 50 (Lanzinger, J., dissenting).

If the answer to both questions is yes, then the offenses are allied offenses of similar import and will be merged.

Conversely, if the court determines that the commission of one offense will *never* result in the commission of the other, or if the offenses are committed separately, or if the defendant has separate animus for each offense, then, according to R .C. 2941.25(B), the offenses will not merge.

{¶23} Appellant was convicted of felonious assault and improperly discharging a firearm into a habitation. He argues these two offenses stemmed from the exact same act: shooting a firearm into a residence. The state agrees the first question of the *Johnson* test can be answered in the affirmative. Appellee's Brief at 16. The second question to be determined is whether the offenses were committed by the same conduct.

{¶24} In *State v. Walton,* 5th Dist. No. 2011 CA 00214, 2012-Ohio-2597, this court reviewed the merger issue involving murder and the predicate offense of improperly discharging a firearm into a habitation. The defendant had shot five rounds into an occupied structure and struck and killed a sixteen year old girl therein. This court concluded the following at ¶ 56:

The count of murder was expressly based on the theory that Singleton's death was the proximate result of appellant's underlying unlawful act of firing a gun into a habitation. While our conclusions would not necessarily apply to every conceivable scenario of a killing from a drive-by shooting into a house, under the circumstances of the case sub judice, we are persuaded that the act and animus of murder as charged herein under R.C. 2903.02(B) are inextricably part of the same conduct as the count of improper discharge of a weapon into a habitation under R.C. 2923.161(A)(1).

{¶25} In *State v. Whipple,* 1st Dist. No. C-110184, 2012-Ohio-2938, our brethren from Hamilton County determined felonious assault and improperly discharging a firearm into a habitation did not merge for sentencing purposes. In *Whipple,* two victims were struck while inside a residence from shots fired outside the residence. The police recovered twenty-eight shell casings from the scene, and the testimony and photographic evidence demonstrated that the defendant and others "had gone on a shooting rampage at this Lincoln Heights home, shooting through vehicles, doors,

windows, and walls." *Whipple,* at ¶ 40. The *Whipple* court at ¶ 41-42 distinguished this court's decision in *Walton* as follows:

> In this way, this case is distinguishable from cases like *State v. Walton,* 5th Dist. No. 2011 CA 00214, 2012-Ohio-2597, 2012 WL 2115517. In that case, the defendant stood outside the front door and fired five shots into the door, one of which killed the victim. He was charged with felony murder, with the predicate offense being discharging a firearm into a habitation. The court found that the two offenses were subject to merger, concluding that the two charges were "inextricably part of the same conduct," but noted that their conclusion "would not necessarily apply to every conceivable scenario of a killing from a drive-by shooting into a house." *Id.* at ¶ 56.

> This case presents such a scenario. The level of destruction unleashed by Whipple upon the home demonstrates that he sought to do more than commit felonious assault. Whipple has, therefore, not met the burden of establishing that he is entitled to merger.

{¶26} We find the *Whipple* case to be analogous to the case sub judice. In the instant case, appellant fired four to twelve rounds at the Wallace residence while approximately ten people were on the front porch and others were inside. Appellant struck two people, one who would not cooperate and one being Shaun Wallace. That left two to ten rounds, "any one of which would support a conviction of R.C.

2923.161(A)(1)." *Walton,* at ¶ 75.  Appellant's course of conduct indicated the distinct purpose to shoot up the Wallace residence, with numerous individuals inside and clearly standing outside.   We find firing the additional rounds constituted separate acts committed with a separate animus.

{¶27}  Assignment of Error II is denied.

{¶28}  The judgment of the Court of Common Pleas of Stark County, Ohio is hereby affirmed.

By Farmer, P.J.

«Panel_2», J. concur and

Wise, J. concurs separately.

**s/ Judge Sheila G. Farmer**

**s/ Judge Julie A. Edwards**

JUDGES

SGF/db 1119

*Wise, J., concurring*

{¶29} I concur with the decision of the majority. I write separately only as a means of articulating my reasoning on the issue of merger.

{¶30} In *Walton*, a decision I authored, the defendant's murder charge was predicated on the underlying offense of improperly discharging a firearm at or into a habitation under R.C. 2923.161(A)(1), which charge was also the basis for the additional count at issue, i.e., improperly discharging a weapon at or into a habitation, likewise under R.C. 2923.161(A)(1). *See Walton* at ¶ 53. In other words, "[t]he count of murder was expressly based on the theory that [the victim's] death was the proximate result of [Walton's] underlying unlawful act of firing a gun into a habitation." *Id.* at ¶ 56.

{¶31} In the case sub judice, the felonious assault charge at issue indeed includes the element of "by means of a deadly weapon," but I find this clearly distinguishable from a murder charge based on the act of improperly discharging a weapon *specifically* at or into a habitation. As such, I am not inclined to rely on the rationale of *Walton* under the present facts and circumstances.

_____
JUDGE JOHN W. WISE

[Cite as *State v. Kelly*, 2012-Ohio-5875.]

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| STEPHEN F. KELLY | : | |
| | : | |
| Defendant-Appellant | : | Case No. 2012CA00067 |

For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Stark County, Ohio is affirmed. Costs to appellant.

s/ Judge Sheila G. Farmer

s/ Judge John W. Wise

s/ Judge Julie A. Edwards

JUDGES